# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **GREG ROBILLARD**, | Case No. 3:16-cv-0780-AC |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| **OPAL LABS, INC.**, | |
| Defendant. | |

Courtney Angeli and Angela Ferrer, BUCHANAN ANGELI ALTSCHUL & SULLIVAN LLP, 921 SW Washington Street, Suite 516, Portland, OR 97205; Edward Piper, ANGELI LAW GROUP LLC, 121 SW Morrison Street, Suite 400, Portland, OR 97204. Of Attorneys for Plaintiff.

Damien T. Munsinger and Jose A. Klein, KLEIN MUNSINGER LLC, 600 NW Naito Parkway, Suite G, Portland OR 97209. Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

United States Magistrate Judge John V. Acosta issued Findings and Recommendation ("F&R") in this case on March 14, 2018. ECF 84. Judge Acosta recommended denying Plaintiff's motion to amend his complaint. Plaintiff objects to a portion of the F&R. For the reasons that follow, the F&R is adopted in part.

**STANDARDS**

A. Review of a Magistrate's Findings and Recommendation

Under the Federal Magistrates Act ("Act"), the Court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate." 28 U.S.C. § 636(b)(1). If a party files objections to a magistrate's findings and recommendations, "the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." *Id.*; Fed. R. Civ. P. 72(b)(3).

For those portions of a magistrate's findings and recommendations to which neither party has objected, the Act does not prescribe any standard of review. *See Thomas v. Arn*, 474 U.S. 140, 152 (1985) ("There is no indication that Congress, in enacting [the Act], intended to require a district judge to review a magistrate's report to which no objections are filed."); *United States. v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc) (holding that the court must review de novo magistrate's findings and recommendations if objection is made, "but not otherwise"). Although in the absence of objections no review is required, the Act "does not preclude further review by the district judge[] *sua sponte* . . . under a *de novo* or any other standard." *Thomas*, 474 U.S. at 154. Indeed, the Advisory Committee Notes to Fed. R. Civ. P. 72(b) recommend that "[w]hen no timely objection is filed," the Court review the magistrate's recommendations for "clear error on the face of the record."

B. Motion to Amend

   1. **Rule 15 of the Federal Rules of Civil Procedure**

Rule 15(a)(2) of the Federal Rules of Civil Procedure provides that the "court should freely give leave [to amend a pleading] when justice so requires." A district court should apply Rule 15's "policy of favoring amendments . . . with extreme liberality." *Price v. Kramer*, 200 F.3d 1237, 1250 (9th Cir. 2000) (quotation marks omitted). The purpose of the rule "is 'to

facilitate decision on the merits, rather than on the pleadings or technicalities.'" *Novak v. United States*, 795 F.3d 1012, 1020 (9th Cir. 2015) (quoting *Chudacoff v. Univ. Med. Ctr.*, 649 F.3d 1143, 1152 (9th Cir. 2011)). A district court, however, may, within its discretion, deny a motion to amend "'due to undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of the amendment.'" *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1007 (9th Cir. 2009) (alteration in original) (quoting *Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008)). "Not all of the factors merit equal weight. As this circuit and others have held, it is the consideration of prejudice to the opposing party that carries the greatest weight." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003). "The party opposing amendment bears the burden of showing prejudice." *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 187 (9th Cir. 1987). Futility of amendment, however, "can, by itself, justify the denial of a motion for leave to amend." *Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995).

    **2. Rule 16 of the Federal Rules of Civil Procedure**

When a court has entered a case scheduling order pursuant to Rule 16 of the Federal Rules of Civil Procedure and a party requests to amend a pleading after the expiration of the deadline set by the court, the party's request is controlled by Rule 16(b), not by Rule 15(a). *See AmerisourceBergen Corp. v. Dialysist W., Inc.*, 465 F.3d 946, 952 (9th Cir. 2006); *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 607-08 (9th Cir. 1992). Thus, the party requesting an amendment must first show "good cause" under Rule 16(b) and then show that its proposed amendment is proper under Rule 15(a). *Johnson*, 975 F.2d at 608.

The Ninth Circuit has explained good cause under Rule 16(b) as follows:

> "A court's evaluation of good cause is not coextensive with an inquiry into the propriety of the amendment under . . . Rule 15." Unlike Rule 15(a)'s liberal amendment policy which focuses on the bad faith of the party seeking to interpose an amendment and the prejudice to the opposing party, Rule 16(b)'s "good cause" standard primarily considers the diligence of the party seeking the amendment. The district court may modify the pretrial schedule "if it cannot reasonably be met despite the diligence of the party seeking the extension." Moreover, carelessness is not compatible with a finding of diligence and offers no reason for a grant of relief. Although the existence or degree of prejudice to the party opposing the modification might supply additional reasons to deny a motion, the focus of the inquiry is upon the moving party's reasons for seeking modification. If that party was not diligent, the inquiry should end.

*Id.* at 609 (citations omitted); *see also In re W. States Wholesale Nat. Gas Antitrust Litig.*, 715 F.3d 716, 737 (9th Cir. 2013), *aff'd sub nom. Oneok, Inc. v. Learjet, Inc.*, 135 S. Ct. 1591 (2015) ("'While a court may take into account any prejudice to the party opposing modification of the scheduling order, 'the focus of the [Rule 16(b) ] inquiry is upon the moving party's reasons for seeking modification . . . [i]f that party was not diligent, the inquiry should end.'" (quoting *Johnson*, 975 F.2d at 609)).

## DISCUSSION

Plaintiff timely filed an objection (ECF 88) to which Defendant responded (ECF 91). Plaintiff objects to the portion of the F&R recommending that Plaintiff's motion to amend be denied with respect to Plaintiff's proposed additional claims for defamation *per se*, invasion of privacy, and retaliation under the Fair Labor Standards Act ("FLSA") and Oregon law. Plaintiff also objects that Judge Acosta failed to consider Plaintiff's motion under Rules 16 of the Federal Rules of Civil Procedure. Plaintiff does not object to the F&R's recommendation that Plaintiff's motion be denied with respect to asserting claims against new defendants, adding a second count of age discrimination against Defendant, or adding additional factual allegations supporting a "cat's paw" theory of discrimination.

PAGE 4 – OPINION AND ORDER

For those portions of the F&R to which neither party has objected, the Court follows the recommendation of the Advisory Committee and reviews those matters for clear error on the face of the record. No such error is apparent. Accordingly, the Court adopts those portions of the F&R. The Court reviews *de novo* the portions of the F&R to which Plaintiff objected.

**A. Rule 16 Analysis**

Plaintiff asserts that he was not aware of the underlying facts supporting his invasion of privacy and defamation claims until after he took the deposition of two witnesses, which occurred on May 18 and 23, 2017. Defendant does not dispute this fact.

With respect to Plaintiff's retaliation claim, Defendant filed its counterclaim, which is the subject of Plaintiff's retaliation claim, on March 29, 2017. Defendant alleges that Plaintiff breached his employment contract by misappropriating Defendant's confidential information—specifically, Defendant's software code. Defendant argues that Plaintiff did not timely or diligently challenge Defendant's counterclaim because Plaintiff did not move to dismiss Defendant's counterclaim and because Plaintiff knew at least by December 2016, when Plaintiff's counsel sent a letter in response to Defendant's cease-and-desist letter sent to Plaintiff, that Defendant's employee Daniel Barrett had "forked the code" from Plaintiff's personal GitHub account. Plaintiff asserts that although Plaintiff knew as of at least December 2016 of that fact, Plaintiff did not have sufficient knowledge as to whether Barrett reviewed the code, informed anyone else at Defendant about Plaintiff's treatment of the code, or sufficient other facts that would support the high bar of plausibly alleging that Defendant's counterclaim is retaliatory.

Plaintiff contends that he did not have sufficient information on which to make a Rule 11-compliant claim of retaliation until after completing additional discovery. This discovery included deposing several witness, including Barrett, whose deposition was taken on

PAGE 5 – OPINION AND ORDER

June 13, 2017. Plaintiff attempted to take Barrett's deposition in May, but Barrett was unavailable due to unexpected paternity leave. On June 30, 2017, Plaintiff obtained additional new information from witness Derek Miller regarding Defendant's use and treatment of purportedly confidential information, which Plaintiff obtained to support Plaintiff's theory that Defendant's counterclaim is retaliatory and not genuine.

On June 16, 2017, three days after Barrett's deposition, Plaintiff's counsel sent an email to Defendant's counsel, providing notice of Plaintiff's intent to file a motion to amend the schedule and file an amended complaint, and requesting conferral. A few days later Defendant's counsel responded, asking to review the proposed amendments. On Friday, June 23, 2017, a "working draft" of a second amended complaint was provided to Defendant's counsel that asserted additional claims for retaliation under state law, invasion of privacy, and defamation *per se*. Plaintiff's counsel requested that Defendant's counsel notify Plaintiff's counsel by June 26, 2017, whether there would be any objections to Plaintiff's proposed amendments. Defendant's counsel did not respond. On June 26th, Plaintiff's counsel sent a second draft amended complaint to Defendant's counsel, this one with additional proposed claims against new individual defendants and a retaliation claim against Defendant under the FLSA.

On June 27, 2017, at depositions, counsel for Plaintiff asked counsel for Defendant whether Defendant would object to the proposed amendments. Counsel for Defendant asked for three more days to decide. On June 30, 2017, counsel for Defendant stated in an email that Defendant would oppose the amendments. Counsel for Plaintiff asked for a further discussion regarding the basis of the opposition. Counsel for Defendant was not available to confer until July 3rd. At that time counsel for Defendant stated that Defendant considered the amendments

PAGE 6 – OPINION AND ORDER

not to be brought in good faith and to be brought only to complicate the litigation. Plaintiff then filed the pending motion on July 6, 2017.

Considering all of the facts, the Court finds that Plaintiff has shown good cause for the delay in bringing his claims for defamation *per se*, invasion of privacy, and retaliation under state and federal law. He diligently pursued discovery related to these claims and then diligently pursued amending his complaint. The fact that Plaintiff did not move to dismiss Defendant's counterclaim, when such a motion would be evaluated considering the allegations in Defendant's answer and counterclaim as true, does not mean that Plaintiff was not diligent in pursuing his retaliation claims. The Court also does not find that the mere fact that Plaintiff knew Barrett "forked the code" from Plaintiff's personal GitHub site is sufficient to require Plaintiff to have filed his retaliation claims earlier. As discussed in Section C below, there is a high bar to allege that a counterclaim is retaliatory. Had Plaintiff made such an allegation based solely on the fact that Barrett copied code from Plaintiff's personal site, without any further supporting facts, Plaintiff's allegation may not have overcome that high bar. Accordingly, the requirements of Rule 16 are met and the Court considers the proposed new claims under the requirements of Rule 15.

**B. Proposed Claims for Defamation *per se* and Invasion of Privacy**

Defendant argues that Plaintiff's proposed defamation and invasion of privacy claims are futile and prejudicial. Each argument is addressed in turn.

**1. Futility**

"[L]eave to amend should be denied as futile 'only if no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim or defense.'" *Barahona v. Union Pac. R.R. Co.*, 881 F.3d 1122, 1134 (9th Cir. 2018) (quoting *Sweaney v. Ada Cty*, 119 F.3d 1385, 1393 (9th Cir. 1997)); *Missouri ex rel. Koster v. Harris*, 847 F.3d 646, 656

PAGE 7 – OPINION AND ORDER

(9th Cir. 2017) ("An amendment is futile when 'no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim or defense.'" (quoting *Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988))). The standard to be applied is identical to that on a motion to dismiss for failure to state a claim under Rule 12(b)(6). *See Miller*, 845 F.2d at 214; *Mendia v. Garcia*, 165 F. Supp. 3d 861, 875 (N.D. Cal. 2016); *see also Puckett v. Lexington-Fayette Urban Cty. Gov't*, 833 F.3d 590, 610 (6th Cir. 2016); *In re Interbank Funding Corp. Sec. Litig.*, 629 F.3d 213, 218 (D.C. Cir. 2010); *Platten v. HG Bermuda Exempted Ltd.*, 437 F.3d 118, 132 (1st Cir. 2006).

Defendant argues futility of Plaintiff's proposed claims based on documents outside the pleadings. As noted above, that is not the correct standard of review. The Court may consider only the allegations in Plaintiff's proposed Second Amended Complaint, documents incorporated by reference into the complaint, and documents appropriate for judicial notice under Rule 12(b)(6).

Plaintiff alleges that during the week of June 1, 2015, Defendant's CEO Stephen Giannini and Defendant's General Counsel Robert Scott called a meeting with Defendant's entire staff and informed the staff that Plaintiff was terminated for cause after having been given an opportunity to improve his performance. Plaintiff further alleges that Scott and Giannini "conveyed at that meeting that 'you don't really get fired [at Defendant], you . . . have to screw up really bad to get fired' and that [Plaintiff's] performance was so poor in the face of clear feedback that the company was 'left . . . without a decision.'" Plaintiff also alleges that at that meeting Scott wanted every employee to know that if they showed up, did their jobs, and were adequately respectful of customers and other employees, then they had no need to fear that they would be terminated like Plaintiff. Plaintiff alleges that this implies that his performance was

"beyond the pale" despite "clear warnings and counseling," which Plaintiff alleges was false because he did not receive any warnings, counseling about poor performance, or even direction about the identity of his supervisor from whom he could expect critical feedback.

Plaintiff alleges in his specific claim for defamation, that during the all-employee meeting Giannini and Scott announced that Plaintiff was terminated for cause, thereby insinuating that Plaintiff had engaged in egregious misconduct. Plaintiff also alleges that Defendant's management advised employees that Plaintiff "inexplicably rejected opportunities to improve his performance." Plaintiff further alleges that these statements were false, they concerned Plaintiff's conduct in his trade or profession, they are defamation *per se*, and that as a result of these statements Plaintiff has suffered and continues to suffer lost income, benefits, and out-of-pocket expenses.

Plaintiff alleges in his specific claim for invasion of privacy that Plaintiff had a reasonable expectation that personnel decisions relating to him would not be publicized to his coworkers. Plaintiff further alleges that Defendant announced to all employees that Plaintiff had been terminated for cause "because he had ignored clear coaching that would have given him an opportunity to improve." Plaintiff alleges that this conduct would be offensive to a reasonable person, particularly because Plaintiff did not receive any previous discipline or warning regarding job performance. Plaintiff also alleges that the personnel decision publicized by Defendant was founded on false information, that some of the information publicized was false, that Defendant had knowledge or acted recklessly with regard to the falsity of the publicized matter, and that as a result of Defendant's conduct Plaintiff has suffered emotional and mental distress.

Under Oregon law, to establish a claim of defamation, a plaintiff must show that the defendant communicated a defamatory statement about the plaintiff to a third party. *Wallulis v. Dymowski*, 323 Or. 337, 342-43 (1996). If the statement, among other things, derogated the plaintiff's business, trade, or profession, the defamation is referred to as "defamation *per se*" and the plaintiff is not required to establish that the publication of the statement caused "special damage" because it is deemed *per se* harmful. *Herrera v. C & M Victor Co.*, 265 Or. App. 689, 701 (2014); *see also Hinkle v. Alexander*, 244 Or. 267, 273 (1966). Such statements can include, "for example, statements that are likely to lead people to question [a] plaintiff's fitness to perform his job, that cast aspersions on the plaintiff's ability to perform essential [job] functions, [and] that assert that the plaintiff lacks a characteristic necessary to successful performance[] of his or her job." *Herrera*, 265 Or. App. at 701 (third alteration added, remaining alterations in original) (quotation marks and citations omitted). Plaintiff plausibly has alleged defamation *per se*, and thus his proposed amendment to add this claim is not futile.

The Oregon Supreme Court has described the elements of an invasion of privacy claim by "false light" by reference to the Restatement (Second) of Torts. *Marleau v. Truck Ins. Exch.*, 333 Or. 82, 92 (2001). To state such a claim, a plaintiff must allege that: (1) the defendant give publicity to a matter concerning the plaintiff that places the plaintiff before the public in a false light; (2) the false light in which the plaintiff was placed would be highly offensive to a reasonable person; and (3) the defendant had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the plaintiff would be placed. *Id.* Thus, "[i]nvasion of privacy by 'false light' requires that the matter be both *false* (or that it create a false impression) and *publicized*. *Id.* at 92-93. The facts alleged by Plaintiff plausibly support a claim that during the meeting of the week of June 1, 2015, Defendant publicized information that

was either false or created a false impression, and that Defendant had knowledge of that falsity or acted in reckless disregard as to that falsity. Accordingly, Plaintiff's proposed amendment to add this claim is not futile.

### 2. Prejudice

Defendant summarily contends that allowing the addition of these new claims would be prejudicial because they would require additional discovery, research, analysis, and motion practice. The F&R had concluded that the amendments would be substantially prejudicial because additional discovery would be required because Defendant would likely need to depose more of its own employees who attended the meeting held the week of June 1, 2015. Defendant, however, does not need to *depose* its own employees, and interviewing one's own employees is not burdensome discovery. Defendant makes no assertion that there are relevant former employees for whom it would have to issue a subpoena and conduct a deposition. Moreover, Plaintiff states that he does not intend to conduct any further depositions, so it does not appear that these claims require much additional discovery.

Even if some additional discovery would be required, the case schedule was stayed in August 2017, after Plaintiff filed his motion to amend. The schedule for dispositive motions has not yet been set and it would not be difficult to extend discovery if needed. Thus, Defendant fails to meet its burden of demonstrating *undue* prejudice, even if some additional discovery is required. *See Brinkley v. Monterey Fin. Servs., Inc.*, 2018 WL 2128418, at *5 (S.D. Cal. May 9, 2018) ("Any time and expense that Defendants may have to spend responding to additional discovery necessitated by the proposed amendment to the Class Period does not support denying the Motion to Amend."); *Knight v. Curry Health Dist.*, 2016 WL 5719686, at *2 (D. Or. Sept. 29, 2016) ("The fact that amending might require Defendant to conduct additional depositions, beyond those anticipated, or might necessitate additional written discovery to and

PAGE 11 – OPINION AND ORDER

from additional parties, does not constitute undue prejudice, warranting denial of Plaintiff's amendment."); *Genentech, Inc. v. Abbott Labs.*, 127 F.R.D. 529, 531 (N.D. Cal. 1989) ("Defendant asserts that the addition of the amendments in issue would require it to depose numerous witnesses across the country who have been previously questioned and would necessitate additional document searches and written discovery. Defendant further argues that additional discovery will postpone the trial date. Such delays do not constitute undue prejudice to the defendant.").

**C. Proposed Claims for Retaliation**

Defendant argues that Plaintiff's proposed retaliation claims should not be permitted under Rule 15 because they are unduly delayed, futile, and prejudicial. As discussed in considering the Rule 16 factors, the Court finds that Plaintiff diligently pursued his retaliation claims in the fourteen week after Defendant filed its counterclaim. Accordingly, there was no undue delay. The Court also does not find that allowing these claims would result in undue prejudice to Defendant. Defendant chose to file its counterclaim involving the underlying subject matter and presumably has already engaged in factfinding to ensure that its counterclaim is compliant with Rule 11. Much of the information needed to defend Plaintiff's retaliation claim would be that same information.

Additionally, Plaintiff's counsel had notified Defendant as early as December 2016 that if Defendant chose to pursue what Plaintiff believed would be a baseless counterclaim relating to misappropriation of Defendant's confidential information, Plaintiff would consider filing a claim for retaliation. Thus, Defendant was on notice of the possibility of this claim during ongoing discovery and witness depositions. Moreover, as discussed above, even some additional discovery is needed, that does not necessarily result in undue prejudice. Under the circumstances

of this claim, the Court finds that even if additional discovery is required, it would not result in undue prejudice.

Regarding futility, first, the Court agrees with the significant weight of authority holding that a counterclaim filed in ongoing litigation can serve as an adverse action to support a retaliation claim, many of which rely on the Supreme Court's decision in *Burlington Northern & Santa Fe Railway Co. v. White*, 548 U.S. 53, 68 (2006), and many of which include claims under the FLSA. *See Romero v. Bestcare, Inc.*, 2018 WL 1702001, at *6 (E.D.N.Y. Feb. 28, 2018), *report and recommendation adopted*, 2018 WL 1701948 (E.D.N.Y. Mar. 31, 2018); *Desio v. Russell Rd. Food & Beverage, LLC*, 2016 WL 4721099, at *7-8 (D. Nev. Sept. 9, 2016); *Romero v. Allstate Ins. Co.*, 2016 WL 3654265, at *14 (E.D. Pa. July 6, 2016); *Wilder v. New Albany Health Assocs. Mso, LLC*, 2015 WL 5244463, at *2-3 (S.D. Ohio Sept. 9, 2015); *Parry v. New Dominion Const., Inc.*, 2015 WL 540155, at *7 (W.D. Pa. Feb. 10, 2015); *Carr v. TransCanada USA Servs., Inc.*, 2014 WL 6977651, at *2-3 (M.D. Tenn. Dec. 8, 2014); *Flores v. Mamma Lombardis of Holbrook, Inc.*, 942 F. Supp. 2d 274, 278-79 (E.D.N.Y. 2013); *Obester v. Lucas Assocs., Inc.*, 2009 WL 10665749, at *3-4 (N.D. Ga. June 5, 2009); *Williams v. Smith, White, Sharma & Halpern, P.A.*, 2009 WL 10669537, at *2-3 (N.D. Ga. May 20, 2009); *Munroe v. PartsBase, Inc.*, 2008 WL 4998777, at *3 (S.D. Fla. Nov, 20, 2008); *Torres v. Gristede's Operating Corp.*, 628 F. Supp. 2d 447, 472-73 (S.D.N.Y. 2008); *Nesselrotte v. Allegheny Energy*, 2007 WL 3147038, at *11-12 (W.D. Pa. Oct. 25, 2007). As these cases discuss, counterclaims can support a retaliation claim when the counterclaims are "baseless," brought in bad faith, brought with a retaliatory motive and lack a reasonable basis in law and fact, or are "designed to deter claimants from seeking legal redress." because of their "in terrorem effect." *E.g.*, *Obester*, 2009 WL 10665749, at *3; *Munroe*, 2008 WL 4998777, at *2-3.

In considering the propriety of Plaintiff's proposed amendment under Rule 15, Defendant again urges the Court to apply the incorrect standard. Defendant contends that the Court could not possibly find that Defendant's counterclaim is baseless. In so arguing, Defendant cites to information outside of the pleadings. As discussed above, the Court considers futility under the Rule 12(b)(6) standard. Thus the Court is not tasked with deciding whether Defendant's counterclaim is baseless, and the Court does not look outside the relevant pleading. Instead, the Court considers whether *Plaintiff plausibly has alleged* that Defendant's counterclaim is baseless, brought with a retaliatory motive and lacks a reasonable basis in law and fact, or otherwise is designed to deter Plaintiff from seeking legal redress. *See, e.g.*, *Romero*, 2018 WL 1702001, at *6 (finding that allegations that the defendant's "sole purpose for filing [the] Counterclaim was to retaliate against Plaintiff Romero for filing this instant action" was sufficient to allege that the counterclaim was baseless and brought with a retaliatory motive and thus granting the motion to amend); *Desio*, 2016 WL 4721099, at *7-8 (summarizing the plaintiff's allegations that the defendant filed baseless counterclaims with retaliatory motive to discourage other dancers from asserting their rights under the FLSA and that the counterclaims threaten to take away dance fees dancers obtain from customers and threaten attorney's fees and costs, and concluding that: "Plaintiff's allegations sufficiently plead a prima facie case for a retaliatory claim under the FLSA. As such, the Court finds that Plaintiff's proposed amended complaint would survive a challenge of legal insufficiency under Federal Rule of Civil Procedure 12(b)(6), and is therefore not futile." (quotation marks omitted)); *Wilder*, 2015 WL 5244463, at *3 ("After considering the proposed amendment and the arguments of the parties, the Court cannot say at this stage of the proceedings that plaintiff is unable to prove any set of facts that would entitle him to relief on his proposed retaliation claim. Where the proposed

amendment is plausible on its face and where there exist substantial arguments on whether or not plaintiff will ultimately prevail on the new claim, the amendment should be permitted. Whether or not plaintiff will ultimately prevail on his claims is not before the Court at this juncture and is better left for resolution at a later stage of the proceedings." (citations omitted)); *Flores*, 942 F. Supp. 2d at 279 ("Plaintiffs claim of retaliation is based upon the allegation that Defendants' counterclaims are baseless and were filed in retaliation for the filing of the complaint. . . . The court does not rule as to whether the retaliation claim will succeed, but holds only that the allegations are sufficient to allow amendment of the complaint. Accordingly, the court grants Plaintiffs' motion to amend the complaint to set forth a claim for retaliation."); *Obester*, 2009 WL 10665749, at *3-4 (summarizing the plaintiff's relevant allegations, noting that the plaintiff "would have been better served to have specifically stated that Defendant's counterclaims are baseless" but nonetheless finding that the plaintiff's allegations provided the defendant with fair notice that the plaintiff is "alleging that the counterclaims are baseless or designed to deter [the plaintiff] from seeking legal redress for her claims of discrimination" and thus concluding that "given the expansive definition of retaliation under *Burlington Northern*, and the liberal standard applied to motions to amend under Fed. R. Civ. P. 15, the Court cannot say that Plaintiff's amendment is futile"); *Williams*, 2009 WL 10669537, at *2-3 (finding sufficient to withstand a futility challenge allegations that the defendant's counterclaims were "calculated to intimidate" the plaintiff and to "dissuade her from pursuing her claims," that the counterclaims "lack a reasonable basis in fact or law," and that the defendants' "retaliatory and improper motive is transparent").

The FLSA[1] establishes that it is unlawful "to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under [the FLSA]." 29 U.S.C. § 215(a)(3).

> Claims pursuant to § 215(a)(3) require that a plaintiff make a prima facie showing of "(1) participation in protected activity known to the defendant, like the filing of a FLSA lawsuit; (2) an employment action disadvantaging the plaintiff; and (3) a causal connection between the protected activity and the adverse employment action." *Mullins v. City of New York*, 626 F.3d 47, 53 (2d Cir. 2010). Furthermore, "[a]n action taken by an employer is retaliatory if 'a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a[n]' FLSA complaint." *McBurnie v. City of Prescott*, 511 F. App'x 624, 625 (9th Cir. 2013) (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006).

*Desio*, 2016 WL 4721099, at *7. Plaintiff meets the first prong because Plaintiff filed this pending action. The question is whether Plaintiff sufficiently alleges that Defendant's filing of its breach of contract counterclaim constitutes an adverse employment action, as that has been defined discussed above, and whether Plaintiff plausibly alleges the requisite causal connection.

---

[1] Retaliation under Title VII and Oregon law is substantively similar and courts analyze those claims together, and retaliation under the FLSA and Title VII is substantially similar and courts analyze those claims together, and thus the Court evaluates Plaintiff's claims under the FLSA standard. *See, e.g.*, *Arias v. Raimondo*, 860 F.3d 1185, 1190-91 (9th Cir. 2017) (relying on Title VII case law to decide an FLSA issue and citing *Darveau v. Detecon, Inc.*, 515 F.3d 334, 342 (4th Cir. 2008) for "the almost uniform practice of courts in considering the authoritative body of Title VII case law when interpreting the comparable provisions of other federal statutes" and noting with particularity that "courts have looked to Title VII cases in interpreting the FLSA"); *Nkrumah v. City of Portland*, 261 Or. App. 365, 381 (2014) (noting that Oregon's minimum wage law is patterned after the FLSA and thus federal regulations and case law are "instructive"); *Dinicola v. State, Dep't of Revenue*, 246 Or. App. 526, 544 (2011) (noting that Oregon's overtime pay statute "in relevant respects is modeled on the FLSA"); *Lindsey v. Clatskanie People's Util. Dist.*, 140 F. Supp. 3d 1077, 1086 (D. Or. 2015) ("The substantive analysis for retaliation under Title VII and ORS § 659A.030 is substantially similar, and courts analyze the claims together.").

Plaintiff's proposed Second Amended Complaint alleges that on December 5, 2016, one and one-half years after firing Plaintiff, Defendant delivered a cease-and-desist letter to Plaintiff demanding that he remove certain source code that he had written while employed with Defendant from GitHub and threatening to file a breach of contract counterclaim against Plaintiff. Plaintiff alleges that in this letter Defendant asserted that it had "only very recently learned" that Plaintiff had placed this code in a publicly accessible location.

Plaintiff alleges that he responded to this letter by explaining that he had placed that code on GitHub in conformance with industry standards and the demonstrated practice and procedure at Defendant. Plaintiff also explained that Barrett knew about Plaintiff's placing this code on GitHub while Plaintiff was employed at Defendant, including in March 2015 when Barrett reviewed the code in Plaintiff's GitHub library. Plaintiff was never told to move the code or disciplined for having the code on that site.

Plaintiff further alleges that on or about May 29, 2015, when Plaintiff was terminated, Barrett "forked the code" from Plaintiff's public GitHub repository and moved it to Defendant or Barrett's public GitHub repository. On or about that same day, Garrett informed David Gorman, Defendant's Vice President, Product, about Plaintiff having the code on a public website. Plaintiff alleges that neither Barrett nor Gorman requested at that time that Plaintiff remove the code from his GitHub site.

Defendant's counterclaim was filed on March 29, 2017. Plaintiff alleges in his specific retaliation claims for relief that Defendant filed its breach of contract counterclaim with no basis in law or fact and in response to Plaintiff's assertion of his rights under state and federal law. Plaintiff further alleges that Barrett "knew with certainty facts that precluded a good faith counterclaims [sic] and Mr. Barrett informed [] Gorman of these facts." Plaintiff also alleges that

Gorman caused the counterclaim to be filed despite his knowledge that the counterclaim did not have a basis in law or fact. Plaintiff additionally alleges that Scott caused the counterclaim to be filed either without a good faith investigation that would have revealed the facts known to Gorman and Barrett, or with knowledge of the facts known to Gorman and Barrett. Plaintiff also alleges that Scott's hostility to Plaintiff's claims is further evidenced by the fact that he announced to all of Defendant's employees that Plaintiff's claims were frivolous. Plaintiff alleges that all of this conduct was intentional. Finally, Plaintiff's alleges that as a direct and proximate result of Defendant's conduct, Plaintiff suffered various harms.

Plaintiff's allegations are more detailed than most of the allegations in the cases recited above in which courts have allowed retaliation claims to be added under Rule 15. Plaintiff's allegations plausibly allege that Defendant's counterclaim is baseless, has no reasonable basis in law and fact and was brought for a retaliatory motive, or was otherwise brought to deter Plaintiff from seeking legal redress, and that the counterclaim would not have been brought but for Plaintiff filing this lawsuit. The Court cannot say at this stage in the proceedings that there is "no set of facts" that Plaintiff can prove "that would constitute a valid and sufficient claim." *Barahona*, 881 F.3d at 1134. Accordingly, Plaintiff plausibly states a claim for retaliation under the FLSA and Oregon law. Thus, Plaintiff's proposed amended complaint would survive a challenge under Rule 12(b)(6) of the Federal Rules of Civil Procedure, and therefore is not futile.

## CONCLUSION

The Findings and Recommendation (ECF 84) is ADOPTED IN PART. The portions to which no party has objected are adopted. The portions to Plaintiff has objected are not adopted and are resolved as set forth in this Opinion and Order. Plaintiff's motion to amend (ECF 51) is GRANTED IN PART. Plaintiff may amend his complaint to assert the additional claims of

defamation *per se*, invasion of privacy, and retaliation under state and federal law. Plaintiff may not make his other proposed amendments.

**IT IS SO ORDERED.**

DATED this 6th day of June, 2018.

/s/ Michael H. Simon
Michael H. Simon
United States District Judge